UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES CROSS,

          Plaintiff,

    v.                                                                     Case No. 25-C-455

TRACY PLASKEY, et al.,

          Defendants.

---

## SCREENING ORDER

---

Plaintiff James Cross, who is currently serving a state prison sentence at the Kettle Moraine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motion for leave to proceed without prepayment of the filing fee and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $6.32. Plaintiff's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint

or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff is an inmate at the Kettle Moraine Correctional Institution. Dkt. No. 1, ¶1. Defendants are Advanced Practice Nurse Practitioner (APNP) Tracy Plaskey, Nurse Amber Moeller, Nurse Nicole Schwaller, Lt. Puterbaugh, Agnesian Imaging, and John Does. *Id*., ¶¶2-6.

On July 10, 2022, Plaintiff's cellmate told him that Plaintiff had a seizure in his sleep. *Id*., ¶7. Plaintiff reported his seizure to a correctional officer, who sent him to the Health Services Unit (HSU). *Id*., ¶8. Once Plaintiff arrived at HSU, APNP Plaskey asked Plaintiff a series of questions, then sent him back to his unit. *Id*. About a month later, on August 6, 2022, Plaintiff had another seizure. *Id*., ¶9. This time, Plaintiff urinated on himself and was walking around the halls very confused; he states that his vision was blurry and he couldn't find his room. *Id*., ¶¶9-12. A correctional officer, as well as another inmate, noticed Plaintiff's condition and called HSU, and Lt. Puterbaugh took Plaintiff to HSU. *Id*., ¶13. There, Nurse Moeller and Lt. Puterbaugh asked Plaintiff if he was taking illegal drugs. *Id*., ¶14. Lt. Puterbaugh stated that he had "seen this type of thing plenty of times," and Nurse Moeller stated that drugs can cause dehydration. *Id*., ¶¶15-16. Plaintiff responded that he was not taking drugs and was willing to submit to a urine and/or blood test. *Id*., ¶15. Nurse Moeller then stated that, because Plaintiff was not being "honest" with them, there was nothing more they could do, and she sent him back to his unit with only a cup of water. *Id*., ¶¶14-16, 30. She refused to call Plaintiff's provider to report the two seizures, send Plaintiff to the emergency room, or order any other testing. *Id*., ¶¶30-31.

A few days later, on August 9, 2022, Plaintiff submitted a Health Services Request (HSR) stating that he has had two seizures and the seizures were not caused by dehydration/drug use and requesting medical care, including a brain scan. *Id*., ¶17. APNP Plaskey responded stating that she placed an order for a neurology consult. *Id*., ¶18. Plaintiff then requested an appointment with

3

the eye doctor for his vision problems. *Id.*, ¶22. An eye doctor saw Plaintiff on October 11, 2022. *Id.*

On October 24, 2022, Plaintiff submitted another HSR indicating that his vision continued to deteriorate and he needed prompt medical attention. *Id.*, ¶19. He asked, "is y'all waiting for me to get hurt?" *Id.* Nurse Schwaller wrote back that a neurology consult has already been scheduled and "you are responsible for being safe on unit ultimately." *Id.*, ¶20. APNP Plaskey also responded, "do not write that you are suspecting we want you injured. That is not a true statement and inappropriate." *Id.*, ¶21. Neither called Plaintiff to HSU for an appointment to reassess his condition or took him to the emergency room. *Id.*, ¶33.

On November 11, 2022, Plaintiff saw the neurologist, who ordered an MRI to be completed "STAT." *Id.*, ¶¶23-25. However, Advanced Care Practitioner John Doe #1 failed to fax the MRI order to Agnesian Imaging until December 13, 2022. *Id.*, ¶¶24, 34. Plaintiff alternatively asserts that, if someone other than John Doe #1 was responsible for faxing the order to Agnesian Imaging, then John Doe #2 failed to timely fax the order. *Id.*, ¶35.

John Doe #3 (at Agnesian Imaging) ultimately scheduled the appointment for January 2, 2023. *Id.*, ¶¶25, 36. On December 22, 2022, the eye doctor sent a follow-up order clarifying that the MRI should be done "STAT" due to "optic nerve pallor and large VF defect." *Id.*, ¶26. Plaintiff asserts that, despite receiving the eye doctor's order, John Doe #3 refused to reschedule the MRI and kept the appointment for January 2, 2023. *Id.*, ¶¶26, 36. The MRI revealed that Plaintiff had a large tumor in his brain, which required two complex surgeries to remove. *Id.*, ¶¶27-28. Plaintiff asserts that, as a result of the delay in assessment and treatment of the tumor, he is now blind and requires the assistance of others for daily tasks like walking around, eating, and reading mail. *Id.*, ¶¶29, 37-38. For relief, Plaintiff seeks monetary damages. *Id.* at 6-7.

# The Court's Analysis

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff seeks to proceed on an Eighth Amendment deliberate indifference claim, along with supplemental state law claims for medical malpractice and negligence. Dkt. No. 1 at 6. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical needs of a prisoner. *Cesal v. Moats*, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). A plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Id*. at 721 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Examples of deliberate indifference include ignoring a request for medical assistance, refusing to take instructions from a specialist, persisting in a course of treatment known to be ineffective, choosing an easier and less efficacious treatment without exercising medical judgment, and delaying treatment which serves no penological interest. *Petties v. Carter*, 836 F.3d 722, 729-31 (7th Cir. 2016).

5

Plaintiff alleges that he had two seizures, dizziness and confusion, deteriorating vision, sporadic incontinence, and migraines, all of which were caused by a large tumor in his brain. He states that APNP Plaskey, Nurse Schwaller, and Nurse Moeller refused to properly assess and treat his condition, in part, because they suspected that the symptoms were caused by drug use. Lt. Puterbaugh allegedly deferred to medical staff's biased opinion regarding drug use despite obvious signs that something else was wrong and that Plaintiff needed emergency treatment. Plaintiff alleges that, even after two different doctors ordered an MRI to be completed "STAT," John Doe #1 failed to fax the MRI order to Agnesian Imaging until December 13, 2022. He alternatively asserts that, if someone other than John Doe #1 was responsible for faxing the order to Agnesian Imaging, then John Doe #2 failed to timely fax the order. Plaintiff claims that John Doe #3 failed to timely schedule the MRI. Plaintiff believes that these delays in assessment and treatment caused him to become permanently blind. He states that, had his condition been timely assessed and treated, he would not have permanently lost his vision. Based on these allegations, the Court will allow Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against APNP Plaskey, Nurse Moeller, Nurse Schwaller, Lt. Puterbaugh, John Doe #1, and John Doe #3. Additionally, at this early stage of the litigation, Plaintiff may also proceed with supplemental state law medical malpractice and negligence claims arising from the same set of common operative facts. *See* 28 U.S.C. §1367; *see Smith v. Hentz*, No. 15-CV-633-JDP, 2018 WL 1400954, at *3 (W.D. Wis. Mar. 19, 2018); *Soderlin v. Doehling*, No. 22-2045, 2023 WL 2399383, at *1 (7th Cir. Mar. 8, 2023).

The Court will not allow Plaintiff to proceed on a deliberate indifference claim against John Doe #2, however. Plaintiff's allegations against John Doe #2 are speculative, and it is unclear whether such person even exists. Plaintiff needs more than a hunch to state a claim. If, in the course of discovery, Plaintiff learns that someone other than John Doe #1 was responsible for

6

faxing the order for an MRI to Agnesian Imaging, he may file an amended complaint that asserts a claim against that individual. If Plaintiff chooses to file an amended complaint, he is reminded that he must comply with the requirements of Civil Local Rule 15.

The Court will also dismiss Agnesian Imaging as a defendant because Plaintiff has not alleged a policy or custom of the entity that violated his constitutional rights. *See, e.g.*, *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 378-79 (7th Cir. 2017) (holding that a private corporation providing essential public services may be liable under §1983 only if it has a policy or custom that violates an individual's constitutional rights). Instead, Plaintiff has alleged that one particular employee of the entity, John Doe #3, was deliberately indifferent by refusing to promptly schedule an MRI ordered by two doctors. That claim is already proceeding in this lawsuit. As a result, Plaintiff fails to state a claim against Agnesian Imaging.

## CONCLUSION

The Court finds that Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against APNP Plaskey, Nurse Moeller, Nurse Schwaller, Lt. Puterbaugh, John Doe #1, and John Doe #3 in connection with the failure to timely assess and treat his brain tumor between July 2022 and January 2023 at the Kettle Moraine Correctional Institution. Plaintiff may also proceed with supplemental state law medical malpractice and negligence claims against the medical defendants.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that Agnesian Imaging and John Doe #2 are **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order

are being electronically sent today to the Wisconsin Department of Justice for service on APNP Plaskey, Nurse Moeller, Nurse Schwaller, and Lt. Puterbaugh.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, APNP Plaskey, Nurse Moeller, Nurse Schwaller, and Lt. Puterbaugh shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the **$343.68** balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for filing to the Court to the following address:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>125 S. Jefferson Street, Suite 102
>Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 18th day of July, 2025.

_____
William C. Griesbach
United States District Judge