JAMES CROSS,

        Plaintiff,

        v.                            Case No. 25-C-455

TRACY PLASKEY,
AMBER HUCK,
NICOLE SCHWALLER,
MARK PUTERBAUGH,
JOHN DOE #1, and
JOHN DOE #3,

        Defendants.

## DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff James Cross, who is currently housed at Chippewa Valley Correctional Treatment Facility, brought this 42 U.S.C. § 1983 action, alleging that his civil rights were violated. In particular, Plaintiff alleges that Defendants APNP Tracy Plaskey, Nurse Amber Huck, Nurse Nicole Schwaller, Lt. Mark Puterbaugh, and two John Does were deliberately indifferent to his medical needs in violation of the Eighth Amendment when they failed to timely assess and treat his brain tumor. He claims that the delays in assessment and treatment of his condition caused him to become permanently blind. Plaintiff also asserts state law medical malpractice and negligence claims. This matter comes before the court on Defendants APNP Plaskey, Nurse Huck, Nurse Schwaller, and Lt. Puterbaugh's (the State Defendants) motion for summary judgment on exhaustion grounds. For the following reasons, the motion will be granted.

The State Defendants have submitted the grievance documents contained in Plaintiff's prisoner file in support of their motion for summary judgment. Plaintiff contends that these documents are inadmissible and cannot be considered by the court. "Grievance documents, such as the ones presented by [Defendants], are routinely accepted by the Court in prisoner cases at the summary judgment on exhaustion phase for the purpose of determining whether administrative remedies have been exhausted." *Remmer v. Wexford Health Sources, Inc.*, No. 19-cv-420, 2021 WL 535542, at *4 (S.D. Ill. Feb. 12, 2021). Although Plaintiff asserts that the documents are not properly authenticated, the court can consider unauthenticated documents on motions for summary judgment if it appears they are capable of authentication at trial. *See Boyce v. Wexford Health Sources, Inc.*, No. 15-C-7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017) ("federal courts routinely consider unauthenticated documents on motions for summary judgment, for example, when it is apparent[] that such documents are capable of reduction to admissible, authenticated form" (internal quotation marks and citation omitted)).

Plaintiff also argues that the grievance documents are hearsay. A statement is hearsay if the declarant makes the statement out of court and the statement is offered for the truth of the matter asserted. Fed. R. Evid. 801. The grievance documents seem to be business records of a regularly conducted activity under Rule 803(6). In any event, even if the grievance documents would not be admissible at trial, the statements contained in the grievance documents are within the inmate complaint examiner, the reviewing authority, and the correctional complaint examiner's personal knowledge, and their testimony about the statements contained in the grievance documents would be admissible. *See Williams v. Schwarz*, No. 15-c-1691, 2018 WL 1961143, at *9 (N.D. Ill. Apr. 26, 2018) (considering statements in an inmate's grievance at summary judgment

2

because the inmate would be allowed to testify about the statements at trial "independently of the grievance documents"). Therefore, the court overrules Plaintiff's evidentiary objections. The court now turns to the merits of the State Defendants' motion.

## BACKGROUND

At all times relevant to this action, Plaintiff was housed at Kettle Moraine Correctional Institution. Dkt. No. 16, ¶ 1; Dkt. No. 26, ¶ 1. In this lawsuit, Plaintiff alleges that he had two seizures, dizziness and confusion, deteriorating vision, sporadic incontinence, and migraines that were caused by a large brain tumor. He claims that APNP Plaskey, Nurse Schwaller, and Nurse Moeller refused to properly assess and treat his condition because they suspected that the symptoms were caused by drug use and that Lt. Puterbaugh deferred to medical staff's biased opinion regarding drug use despite obvious signs that something else was wrong and that Plaintiff needed emergency treatment. As for the John Doe defendants, Plaintiff asserts that even after two different doctors ordered an MRI to be completed "STAT," John Doe #1 failed to timely fax the MRI order to Agnesian Imaging. He also claims that, once the MRI order was sent to Agnesian Imaging, John Doe #3 failed to timely schedule the MRI. Plaintiff contends that these delays in assessment and treatment caused him to become permanently blind. *See* Dkt. Nos. 1, 7.

Plaintiff filed one inmate grievance related to the claims in this lawsuit on May 14, 2023: KMCI-2023-7067. Dkt. No. 18-2 at 14. He stated:

> On August of 2022, approximately 8 to 8:30 a.m., I had a seizure in my bed. I alerted the C.O. and the C.O. called HSU but Lt. Puterbaugh came and took me to HSU thinking I had a drug overdose. I was took back to the unit and two to three weeks later, my vision started to drop drastically. I was told by HSU that I would be getting a MRI if Madison approve[d] it. Around 2 or 3 months later of my vision continuing to fail without a MRI being done, around January 3rd, 2023, I received a MRI. January 4th, 2023, I was told I had a brain tumor, which I feel Kettle Moraine should have took my incident more serious and rushed a MRI for medical attention.

3

*Id.* Plaintiff does not dispute that that he filed any other inmate complaint related to his lawsuit. Dkt. No. 26, ¶ 25. The inmate complaint examiner (ICE) received the grievance on May 15, 2023. On May 17, 2023, the ICE recommended dismissal of the grievance, finding that Plaintiff's allegations were not supported by the record. Dkt. No. 18-2 at 2–3. The reviewing authority (RA) accepted the recommendation and dismissed the grievance the same day. *Id.* at 4. The RA's dismissal decision included a notice that Plaintiff had 14 days after the date of the decision to file an appeal with the correctional complaint examiner (CCE). *Id.*

On May 26, 2023, Plaintiff was placed in temporary lock up status (TLU) in the Restricted Housing Unit. Although he did not enter TLU with his property, the property sergeant gave Plaintiff his property on May 30, 2023. Plaintiff, who was blind, did not have access to a special needs worker while he was in segregation. He contends, however, that he did not really use his special needs worker and preferred to rely on his cellmate for assistance for reasons of availability and trust. Plaintiff was given help to walk to the shower and to read a form regarding the inventory of items in his cell. He asserts that he would have felt "very uncomfortable" receiving help from correctional officers in drafting an appeal because he might not have been able to trust them. He maintains that he would have had to sacrifice some of his remaining limited privacy if they went through his letters and effects. Plaintiff asserts that it would have been humiliating and intruded on his remaining dignity. On May 30, 2023, Plaintiff was placed on disciplinary separation status. He did not return to the general population until June 4, 2023. Dkt. No. 26, ¶¶ 1001, 1003, 1013, 1019, 1021–22, 1025; Dkt. No. 32, ¶¶ 1001, 1003, 1013, 1019, 1021–22, 1025.

Plaintiff appealed the RA's dismissal of his grievance on June 6, 2023. Dkt. No. 18-2 at 30. Plaintiff acknowledged in his appeal that he was filing it beyond the 14-day appeal time. *Id.* He explained, "The reason I have exceeded the 14 days to appeal the reviewing authority decision

is because I was sent to segregation and I was denied my mail which included my decision of dismissal. And they know I'm legally blind so I can't read or write without someone doing it for me. That's why the institution appointed me a PSW, which I can't or don't have in segregation."

*Id.*

> The CCE recommended rejecting Plaintiff's appeal. She reasoned:
>
> On 5.17.2023, the institution printed the Reviewing Authority's complaint decision for distribution to the inmate. The day after printing is the first day of the fourteen days allowed for the filing of an appeal to the CCE.
>
> This office received the inmate's appeal on 6.14.2023.
>
> The inmate requested the late submission be accepted late for cause given placement in Segregation and denied mail. However, the print distribution was 5.17.2023, the complainant was placed in TLU on 5.26.2023, and then disciplinary separation on 5.30.2023, where he is currently in DSP2 status, and managed to submit the untimely appeal in that status.
>
> Communication with the facility indicated the complainant was not denied mail, and the complainant would have received the distribution printed on 5.17.2023 long before TLU placement on 5.26.2023.
>
> Therefore, the CCE Office received the appeal beyond the fourteen day timeframe provided under Wis. Admin. Code, s. DOC 310.12(1). It is untimely even taking into account a four day grace period for the "prison mail box rule." Finding no good cause to address this late appeal, it is recommended it be rejected for being untimely.

*Id.* at 6–7. The Office of the Secretary accepted the recommendation and rejected the appeal as untimely filed. *Id.* at 8.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four*

*Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)).  In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).  "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*  Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances."  *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citation omitted).  "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  The Seventh Circuit applies a "strict compliance approach to exhaustion."  *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

That said, a prisoner is only required to exhaust all administrative remedies that are "available."  *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).  The Seventh Circuit has provided a non-exhaustive list of circumstances where administrative remedies may be "unavailable": "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the

6

administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

Wisconsin has established the Inmate Complaint Review System (ICRS) to review inmate complaints. Wis. Admin. Code § DOC 310.05. Inmates must file an inmate complaint with the ICE within 14 days of the relevant occurrence giving rise to the complaint. § DOC 310.07(2). If the ICE rejects the complaint, an inmate may appeal a rejected complaint within 10 days to the appropriate RA who shall only review the basis for the rejection of the complaint. § DOC 310.10(10). An inmate who is dissatisfied with the resolution of his inmate complaint may appeal the decision to the CCE within 14 days. § DOC 310.12. Inmate appeals that are submitted outside the 14-day window may be accepted for good cause. § DOC 310.12(6). The Secretary shall make a decision within 45 days following receipt of the CCE's recommendation and that decision is final. § DOC 310.13. "Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).

Good cause is "occasioned by something that is not within the control of the movant." *Pyles v. Nwaobasi*, 829 F.3d 860, 866 (7th Cir. 2016). Absent an abuse in discretion, "it is not [a district court's] role to override [an examiner's] decision to refrain from finding good cause for the delay . . . . That discretion rests solely within the authority of [the examiner]." *Clark v. Spittle*, No. 04-C-119, 2004 WL 941206, at *1 (W.D. Wis. Apr. 30, 2004). The relevant question in determining whether "the examiner abused his discretion by not affording plaintiff a good cause exemption . . . is whether plaintiff's failure to file his claims in a timely manner was due to

circumstances that were reasonably beyond his control." *Schmidt v. Esser*, No. 15-CV-538, 2018 WL 4964521, at *2–3 (W.D. Wis. Oct. 15, 2018).

The State Defendants argue that Plaintiff's inmate complaint was properly rejected as untimely without good cause and that Plaintiff, therefore, failed to exhaust administrative remedies. Plaintiff asserts that administrative remedies were unavailable to him because he could not file an appeal while he was in segregation, he did not have his paperwork while he was in segregation, and he was blind and did not have assistance to file an appeal while in segregation.

The RA dismissed Plaintiff's inmate grievance on May 17, 2023. Plaintiff had 14 days after the RA's decision to file an appeal with the CCE, or until June 1, 2023. Plaintiff did not file his appeal until June 6, 2023. Plaintiff asserts that he could not file an inmate appeal because he was in segregation. But Plaintiff was not placed in segregation until May 26, 2023, nine days after the RA dismissed his grievance. Plaintiff does not explain why he could not submit an appeal before he was placed in segregation. *See Hoeft v. Wisher*, 181 F. App'x 549, 551 (7th Cir. 2006) ("Hoeft offers no explanation as to why he was unable to file his administrative appeal in the seven days prior to his transfer . . . ."). Although Plaintiff contends that he did not initially have his property when he was placed in segregation, he admits that he obtained his property by May 30, 2023. Plaintiff also argues that he could not file an appeal while in segregation because he is blind and did not have assistance. But Plaintiff asserts that he did not request help from correctional officers to file an appeal because he did not trust them.

In sum, Plaintiff's failure to timely file his inmate appeal was caused by his own inaction, not by circumstances reasonably beyond his control. Under these circumstances, the court will not "second guess" the CCE's reasoned decision finding that the untimely appeal was not supported by good cause and rejecting the appeal. *See, e.g.*, *Williams v. Syed*, No. 16-cv-474, 2022

8

WL 579471, at *5 (W.D. Wis. Feb. 25, 2022) ("[T]his court will not second-guess the discretionary decision of the CCE to determine that an untimely appeal is not supported by good cause."). An inmate appeal that is properly "rejected" based on a procedural defect does not fulfill the exhaustion requirement. *See Conyers*, 416 F.3d at 584. Plaintiff failed to properly exhaust administrative remedies. The State Defendants are therefore entitled to summary judgment on Plaintiff's Eighth Amendment claims against them.

The court also concludes, based on the record, that Plaintiff failed to exhaust his administrative remedies as to John Doe #1. The record of Plaintiff's grievance history makes clear that the only inmate complaint Plaintiff filed related to the claims in this lawsuit was KMCI-2023-7067, which Plaintiff did not timely appeal. Plaintiff does not dispute that he did not file any other grievances related to his claims in this lawsuit. *See* Dkt. No. 26, ¶ 25. Therefore, Plaintiff has failed to exhaust his administrative remedies as to John Doe #1, and his Eighth Amendment claim against John Doe #1 will be dismissed without prejudice.

Finally, the court reconsiders sua sponte its screening order and concludes that Plaintiff has failed to state a claim against John Doe #3. Plaintiff alleges that, after John Doe #3 received notice on December 22, 2022, that the MRI was to be done STAT, John Doe #3 failed to reschedule the MRI to a date earlier than January 2, 2023. But Plaintiff does not sufficiently allege that John Doe #3 is a state actor. At most, Plaintiff alleges that John Doe #3 performed an isolated function to allow Plaintiff to obtain an MRI. That is not enough for liability to attach under 42 U.S.C. § 1983. *See Moore v. Peterson*, No. 15-cv-936, 2016 WL 7017380, at *3 (E.D. Wis. Dec. 1, 2016) (finding that a hospital employee who executed a blood draw pursuant to a warrant was not a state actor under § 1983 because the service provided by the employee was transitory and isolated). Therefore, Plaintiff's Eighth Amendment claim against John Doe #3 must be dismissed.

9

What remains are Plaintiff's state law claims.  The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims."  *Williams Elecs. Games, Inc. v Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *see also* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").  Nothing in this case suggests that the presumption should be ignored.  Accordingly, Plaintiff's state law claims will be dismissed without prejudice so that they may be pursued in a state forum.

## CONCLUSION

For these reasons, the State Defendants' motion for summary judgment on exhaustion grounds (Dkt. No. 14) is **GRANTED**.  Plaintiff failed to properly exhaust his administrative remedies as to his Eighth Amendment claims against APNP Plaskey, Nurse Huck, Nurse Schwaller, Lt. Puterbaugh, and John Doe #1.  Therefore, Plaintiff's Eighth Amendment claims against APNP Plaskey, Nurse Huck, Nurse Schwaller, Lt. Puterbaugh, and John Doe #1 are dismissed without prejudice.  Plaintiff has failed to state an Eighth Amendment claim against John Doe #3.  Plaintiff's state law claims are dismissed without prejudice.  This case is dismissed.  The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 16th day of June, 2026.

_____
William C. Griesbach
United States District Judge

10

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.